# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Contech Bridge Solutions, Inc., et al,

                                               Case No.: 1:11-cv-216

        Plaintiffs,

    v.

                                             Judge Michael R. Barrett

David E. Keaffaber, et al,

        Defendants.

## OPINION & ORDER

This matter is before the Court on two motions to dismiss: (1) Defendant David E. Keaffaber's Motion to Dismiss for Lack of Subject Matter Jurisdiction, Lack of Personal Jurisdiction and Improper Venue, or in the Alternative, Motion to Transfer (Doc. 11)[1]; and (2) the Motion to Dismiss of Defendant, Sanders Pre-Cast Concrete Systems, Inc., or in the Alternative, to Transfer Venue (Doc. 27). Plaintiffs Contech Bridge Solutions, Inc., Contech Construction Products Inc., and Contech Construction Products Holdings, Inc. (collectively "Contech") have filed responses in opposition to both motions (Docs. 15 & 29). Defendant David E. Keaffaber has filed a reply in support (Doc. 25), and Defendant Sanders Pre-Cast Concrete Systems, Inc. ("Sanders") has also filed a reply in support (Doc. 37). Additionally, the Court held a hearing (the "Hearing") regarding both pending motions on September 6, 2011. (See Doc. 50 for a transcript.) Following the Hearing, Plaintiffs filed a supplemental brief in opposition (Doc. 47), Defendant Sanders filed a supplemental brief in support (Doc. 48), and Defendant Keaffaber also

---

[1] All Court document citations are to Docket Entry numbers.

filed a supplemental brief in support (Doc. 49). This matter is now ripe for review.

Plaintiffs' Complaint (Doc. 1) alleges seven causes of action: (1) a breach of the Ohio Uniform Trade Secrets Act (Doc. 1 ¶¶ 66–74); (2) a breach of the Indiana Uniform Trade Secrets Act (Doc. 1 ¶¶ 75–82); (3) tortious interference with business relationships (Doc. 1 ¶¶ 83–91); (4) breach of contract solely against Defendant Keaffaber (Doc. 1 ¶¶ 92–101); (5) unfair competition (Doc. 1 ¶¶ 102–08); (6) a claim for declaratory judgment (Doc. 1 ¶¶ 109–15); and (7) a claim for injunctive relief (Doc. 1 ¶¶ 116–24). Plaintiffs seek monetary damages, an accounting of Defendants' profits, costs, attorneys' fees, double or treble damages, punitive damages, injunctive relief, and a declaratory judgment. (Doc. 1, 22.) The Court summarizes its rulings below.

## I. Background

Plaintiff Contech, whose principal places of business are in Ohio, is in the business of providing products and services related to retaining-wall systems and manufacturing and selling precast-concrete structures, including bridges, arches, culverts, and walls. (Doc. 1 ¶¶ 2–3, 5.) Defendant Sanders, an Indiana corporation, competes with Contech in both the precast-concrete structure industry and in the retaining-wall industry. (Doc. 1 ¶¶ 6, 8.) Defendant David E. Keaffaber, a resident of Indiana, was employed by Contech from July 2005 until April 8, 2011. (Doc. 1 ¶¶ 9, 113; Doc. 25-1 ¶ 5.) Between 1997 and 2005, Mr. Keaffaber was employed by BridgeTek, which was acquired by Contech in 2005. (Doc. 25-1 ¶¶ 3, 4.) Mr. Keaffaber's most recent position with Contech was as "Director – Pre-Cast Bridge." But during his time at Contech he also held the positions of "Vice-President – Regulatory Development" and "Vice-President – Midwest." (Doc. 1 ¶ 10; Doc. 15-1 ¶ 3.) In his

most recent position, Mr. Keaffaber was responsible for promoting various projects, providing training and sales support to field teams, managing regulatory activities, securing certain Department of Transportation regulatory approvals, and developing potential business opportunities. (Doc. 1 ¶ 15; Doc. 25-1 ¶ 7.) He worked from his home office in Fishers, Indiana. (Doc. 25-1, 8.)

Contech alleges that during the time it employed Mr. Keaffaber, he had access to confidential business records and trade secrets. (Doc. 1 ¶ 11.) To protect this confidential information, Contech and Mr. Keaffaber entered into a Duties and Covenants Agreement (the "Agreement").[2] (Doc. 1 ¶ 17.) In the Agreement, Mr. Keaffaber agreed to the following: (1) to devote his full working time to the business and affairs of his employer (Doc. 1 ¶ 19; Doc. 1-1, 2–3; Doc. 1-2, 2); (2) to not engage in any outside business "similar to that transacted by Contech without first having obtained the express written consent of Contech" (Doc. 1 ¶ 19; Doc. 1-1, 3; Doc. 1-2, 2); (3) to not divulge any trade secrets or other confidential information obtained during his employment (Doc. 1 ¶ 20; Doc. 1-1, 3; Doc. 1-2, 3); (4) to not compete with Contech during the term of employment and for two years thereafter (Doc. 1 ¶ 21; Doc. 1-2, 3); and (5) to not solicit Contech employees or customers or interfere with Contech's relationships with employees or customers during his term of employment and for two years thereafter (Doc. 1 ¶ 22; Doc. 1-1, 3–4). Although Mr. Keaffaber physically signed the Agreement at his home in Indiana, (Doc. 50, 74; Doc. 25, 3) he mailed it to Contech

---

[2] There were actually two Duties and Covenants Agreements (Docs. 1-1 & 1-2). The first (Doc. 1-1), signed on July 13, 2005, was between Mr. Keaffaber and Contech Arch Technologies, Inc., which is the former name of Plaintiff Contech Bridge Solutions, Inc. (Doc. 1-1, 1; Doc. 1 ¶¶ 3, 4.) The second (Doc. 1-2), signed on March 27, 2006, was between Mr. Keaffaber and Plaintiff Contech Construction Products Holdings Inc. (Doc. 1-2, 1.) Plaintiff Contech Bridge Solutions, Inc. is a wholly owned subsidiary of Plaintiff Contech Construction Products Holdings, Inc. (Doc. 1 ¶ 4.) The fact that there were two Duties and Covenants Agreements is otherwise irrelevant—the Court refers to them collectively as the "Agreement." The Court only notes differences between the two agreements by the use of citations.

in Ohio (Doc. 25, 3). Furthermore, Ohio law governs the Agreement, (Doc. 1 ¶ 62; Doc. 1-1, 4; Doc. 1-2, 4), and more fundamentally, it creates a contractual relationship between Mr. Keaffaber and Contech—an entity with its principal place of business in Ohio (*see* Doc. 1 ¶¶ 2–4.)

In a June 10, 2010, response to a legal-compliance questionnaire, Mr. Keaffaber represented that he had no outside business or compensation, and he agreed that if that changed in the future, he would get Contech's advance approval. (Doc. 1 ¶ 26.) Plaintiffs allege that Mr. Keaffaber breached each of the above duties in the Agreement and misrepresented the true nature of his outside activities in the June 10, 2010, legal-compliance questionnaire. (Doc. 1 ¶ 27.)

Mr. Keaffaber's allegedly actionable conduct includes directly competing with Contech for business, sharing confidential information with Contech's competitors (including Defendant Sanders), assisting former Contech employees with efforts to compete with Contech, and soliciting the acceptance of competing products with governmental entities. (Doc. 1 ¶ 28.) One of the more specific allegations is that while he was working full time for Contech, in March 2010, Mr. Keaffaber entered into a consulting agreement with Sanders, and as a result, he provided Sanders with confidential business information and trade secrets. (Doc. 1 ¶¶ 29, 31, 36.) Pursuant to that consulting agreement, Mr. Keaffaber allegedly attempted to arrange for Ohio Department of Transportation regulatory approval of a certain Sanders retaining-wall product. (Doc. 1 ¶ 41.) This act was allegedly in direct competition with Contech given Contech's ongoing business relationship with the Ohio Department of Transportation involving retaining-wall products. (Doc. 1 ¶ 42.) Mr. Keaffaber also allegedly assisted a

Contech employee with an attempt to set up a new business to compete with Contech. (Doc. 1 ¶ 49.)  Plaintiffs make many other similar allegations.  (*See* Doc. 1 ¶¶ 50–61.)

Relating to the issues of subject-matter jurisdiction, personal jurisdiction, and venue presently before the Court, in his role as Director – Pre-Cast Bridge, the geographic region Mr. Keaffaber was responsible for included Ohio.  (Doc. 15-1 ¶ 4.)  The following bullet points detail specific instances of Mr. Keaffaber's work-related contacts with Ohio:

- Mr. Keaffaber regularly traveled to Contech's headquarters in West Chester, Ohio, to attend meetings.  (Doc. 15-1 ¶ 5; Doc. 50, 19.)  Inconsistent evidence in the record indicates that these meetings occurred either once every month or two (Doc. 15-1 ¶ 5), two or three times a year (Doc. 50, 19), or once each quarter (Doc. 25-1 ¶ 19).

- Mr. Keaffaber traveled to Contech headquarters in Ohio several times per year to train field teams.  (Doc. 15-1 ¶ 6.)  Keaffaber concedes that he was required to attend these meetings and that they were regional training sessions not specific to the state of Ohio.  Likewise, he contends that these visits were unrelated to any Ohio-specific business.  (Doc. 25-1 ¶¶ 19–22.)

- Mr. Keaffaber gave presentations at various seminars throughout Ohio, including one in 2009 and three in 2010.  (15-1 ¶ 7.)  He also voluntarily attended an engineering conference in Ohio for business purposes in 2008.  (Doc. 50, 22–23.)

- Mr. Keaffaber marketed Contech products in Ohio, including at a lunch meeting with a potential customer in Ohio in 2010.  (Doc. 50, 51.)

- Mr. Keaffaber maintains that he did not work on any Ohio projects (Doc. 25, 1) and

that he did not single-handedly work on any projects in Ohio, (Doc. 50, 76) but his supervisor avers that he was involved in projects with Contech clients in Ohio and that he traveled to Ohio to meet with certain clients. (15-1 ¶ 9.) Mr. Keaffaber's testimony at the Hearing confirms that he did indeed travel to Ohio to give a presentation to at least one Contech client. (Doc. 50, 96–97.)

- Mr. Keaffaber was the primary contact for two colleagues who worked on projects in Ohio. (*See* 25-1 ¶¶ 31–33.) Likewise, he regularly corresponded with Contech employees in Ohio via telephone or e-mail. (Doc. 15-1 ¶ 10; *see* Doc. 50, 52, 53–55.)

- Finally, Mr. Keaffaber sent at least one e-mail to an Ohio Department of Transportation representative as part of his consulting work for Defendant Sanders. (Doc. 15-1 ¶ 11; Doc. 50, 55–57.)

Notwithstanding the foregoing, Mr. Keaffaber testified that he spent less than five percent of his time while working for Contech physically in Ohio. (Doc. 50, 70). He further maintains that two of his colleagues handled the daily duties in Ohio for Contech. (Doc. 50, 76.) Mr. Keaffaber further stated that if he did in any way compete with Contech, it would have been solely out of his home and office in Indiana. (Doc. 50, 85–87.) Mark Sanders, Defendant Sanders' President, avers that all of Sanders' contacts with Mr. Keaffaber took place in Indiana. (Doc. 27-1 ¶ 13.)

## II.    Legal Analysis

Defendant Keaffaber brings his motion to dismiss under Rules 12(b)(1), 12(b)(2), and 12(b)(3) of the Federal Rules of Civil Procedure. He argues for dismissal based on lack of subject-matter jurisdiction, lack of personal jurisdiction, and improper venue.

(Doc. 11, 1.)  Defendant Sanders initially sought dismissal based on Rules 12(b)(2) and 12(b)(3), arguing for dismissal for lack of personal jurisdiction, and alternatively, transfer of venue.  (Doc. 27, 1.)  However, Sanders has since withdrawn its motion to dismiss based on personal jurisdiction.  It now only seeks to transfer venue.  (Doc. 40, 1.)

### A.    Rule 12(b)(1) Standard

Rule 12(b)(1) provides that an action may be dismissed for "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  Plaintiffs bears the burden of proving jurisdiction when challenged by a Rule 12(b)(1) motion.  *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (citing *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)).  "[T]he plaintiff must show that the complaint alleges a claim under federal law, and that the claim is substantial."  *Mich. S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n, Inc.*, 287 F.3d 568, 573 (6th Cir. 2002) (internal quotations omitted) (quoting *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996)).  "The plaintiff will survive the motion to dismiss by showing 'any arguable basis in law' for the claims set forth in the complaint."  *Id.* (quoting *Musson Theatrical*, 89 F.3d at 1248).

The Sixth Circuit recognizes that Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction fall into two categories: facial attacks and factual attacks.  *O'Bryan v. Holy See*, 556 F.3d 361, 375 (6th Cir. 2009) (citing *Gentek Bldg. Prods. v. Sherwin-Williams Claims*, 491 F.3d 320, 330 (6th Cir. 2007)).  A facial attack on subject-matter jurisdiction only questions the sufficiency of the pleading.  *Id.* at 375–76.  In reviewing a facial attack, the court takes the allegations in the complaint as true.  *Id.* at 376.  A factual attack is "not a challenge to the sufficiency of the pleading's allegations,

but a challenge to the factual existence of subject matter jurisdiction." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In such a factual attack, the court must "weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). Furthermore, in a factual attack, there is no presumption of truthfulness to the allegations in a complaint. *Id.* Here, it is apparent that Mr. Keaffaber brings a factual attack given that he questions the facts underlying subject-matter jurisdiction. (*See* Doc. 11-1, 7.)

**B.    Rule 12(b)(2) Standard**

Rule 12(b)(2) provides for dismissal of a claim for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). A plaintiff bears the burden of establishing personal jurisdiction. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). On a personal-jurisdiction motion to dismiss, district courts have discretion to either, decide the motion on affidavits alone, to permit discovery on the issue, or to conduct an evidentiary hearing to resolve factual questions. *See, Inc. v. Imago Eyewear Pty, Ltd.*, 167 F. App'x 518, 520 (6th Cir. 2006) (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). Here, the Court ordered an evidentiary hearing (the "Hearing"). *See Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) ("If the written submissions raise disputed issues of fact or seem to require determinations of credibility, the court retains the power to order an evidentiary hearing, and to order discovery of a scope broad enough to prepare the parties for that hearing."). When such a hearing occurs, plaintiffs have an increased burden; they must show that jurisdiction exists under the preponderance of the evidence standard. *Serras*,

8

875 F.2d at 1214 (citing *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980)).  Thus, Contech must establish that personal jurisdiction exists by a preponderance of the evidence.[3]  *See id.*

### C.    Rule 12(b)(3) Standard

Rule 12 also provides for dismissal based on "improper venue."  Fed. R. Civ. P. 12(b)(3).  "However, a Rule 12(b)(3) motion to dismiss for improper venue is simply the procedural vehicle by which to challenge improper venue; the Rules of Civil Procedure do not contain any venue provisions or requirements.  The requirements for venue are set by statute, as are the remedies available for improper and inconvenient venue." *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 538 (6th Cir. 2002).  Defendants argue that venue is improper under 28 U.S.C. §§ 1404 & 1406.  (Doc. 27, 11; Doc. 11-1, 7.)

### III.    Defendant Keaffaber's Motion to Dismiss

Defendant Keaffaber argues that dismissal is warranted based on lack of subject-matter jurisdiction, lack of personal jurisdiction, and improper venue.  In the alternative, he requests that this matter be transferred to the United States District Court for the Southern District of Indiana.  (Doc. 11, 1.)  The Court considers each basis below.

### A.    Subject-Matter Jurisdiction

Plaintiffs' Complaint alleges that this Court has subject-matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332(a).  (Doc. 1 ¶ 64.)  Section 1332 states that "district courts shall have original jurisdiction of all civil actions where the

---

[3] Note that "a pretrial ruling denying a 12(b)(2) motion to dismiss 'does not purport to settle any disputed factual issues germane to the underlying substantive claim.  What is settled is the court's power to exercise personal jurisdiction over a defendant, nothing more.'"  *Serras*, 875 F.2d at 1214 (quoting *Val Leasing, Inc. v. Hutson*, 674 F. Supp. 53, 55 (D. Mass. 1987)).

matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). Contech alleges that the amount in controversy exceeds $75,000 (Doc. 1 ¶ 64), but Defendant Keaffaber argues that this allegation is erroneous and that the amount in controversy is not satisfied here (Doc. 11-1, 7). "When a statute conditions federal court jurisdiction on the satisfaction of an amount in controversy requirement, the failure to meet that specified amount divests the federal courts of subject-matter jurisdiction." *Schultz v. Gen. R.V. Center*, 512 F.3d 754, 756 (6th Cir. 2008).

"It is well-settled that 'if a plaintiff brings an action in federal court and a defendant seeks dismissal on amount-in-controversy grounds, the case will not be dismissed unless it appears that the plaintiff's assertion of the amount in controversy was made in bad faith.'" *Schultz*, 512 F.3d at 756 (quoting *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 157 (6th Cir. 1993)). "A showing of bad faith is made if the defendant demonstrates 'to a legal certainty that the original claim was really for less than the amount-in-controversy requirement.'" *Id.* (quoting *Gafford*, 997 F.2d at 157); *see also Rosen v. Chrysler Corp.*, 205 F.3d 918, 920–21 (6th Cir. 2000) ("In diversity cases, the general rule is that the amount claimed by a plaintiff in his complaint determines the amount in controversy, unless it appears to a legal certainty that the claim is for less than the jurisdictional amount.").

Defendant Keaffaber makes three arguments in alleging that the amount-in-controversy requirement is not satisfied here: (1) "Mr. Keaffaber and Sanders have made no profits from their contacts in their consulting relationship in any state"; (2) Mr. Keaffaber's monetary compensation from Sanders was . . . less than $9,000"; and (3)

"as Contech and Sanders are not direct competitors, Contech has suffered no damages through Mr. Keaffaber's and Sanders' activities." (Doc. 11-1, 7.) However, Mr. Keaffaber presents no evidence or caselaw in support of these arguments. (*See* Doc. 11-1, 6–7; Doc. 25, 7–8; Doc. 49, 6–7; Doc. 50.) This is a failure to show that Plaintiffs' assertion of the amount in controversy was made in "bad faith" or that the amount cannot be reached "to a legal certainty." *See Schultz*, 512 F.3d at 756. In contrast, Plaintiffs effectively and correctly counter each of Mr. Keaffaber's arguments, (Doc. 15, 15–18; Doc. 47, 11) to which Mr. Keaffaber has no response (*see* Doc. 25, 7–8; Doc. 49, 6–7; Doc. 50). Because Plaintiffs have shown much more than an "arguable basis in law" for the relief they seek, they meet their burden of proving that subject-matter jurisdiction exists here. *See Mich. S. R.R.*, 287 F.3d at 573. No further analysis is necessary. Mr. Keaffaber's motion to dismiss for lack of subject-matter jurisdiction is DENIED.

### B. Personal Jurisdiction

Mr. Keaffaber makes two general arguments related to personal jurisdiction: (1) Ohio's long-arm statute does not extend to him[4] (Doc. 11-1, 4, 5); and (2) personal jurisdiction is lacking under the Due Process clause (*see* Doc. 11-1, 4; Doc. 25, 2). However, because Plaintiffs bear the burden of establishing personal jurisdiction here, their arguments drive this analysis. *See Air Prods. & Controls*, 503 F.3d at 549. Plaintiffs contend that Ohio's long-arm statute and the requirements of due process are both satisfied. (Doc. 15, 1.) As stated above, Plaintiffs must establish the existence of personal jurisdiction by a preponderance of the evidence. *See Serras*, 875 F.2d at

---

[4] Mr. Keaffaber appears to abandon this argument—he does not mention Ohio's long-arm statute in his reply in support or in his supplemental post-hearing brief. (*See* Docs. 25 & 49.) The Court addresses the issue nonetheless.

1214.

## 1.    Personal Jurisdiction Standard

For a district court to have personal jurisdiction over a party who is not present in the forum state, the party must have "minimum contacts" with the forum state such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  "Depending on the type of minimum contacts in a case, personal jurisdiction can be either specific or general." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549–50 (6th Cir. 2007) (citing *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1116 (6th Cir. 1994)).  The Sixth Circuit states as follows about specific and general jurisdiction:

> Jurisdiction may be found to exist either generally, in cases in which a defendant's "continuous and systematic" conduct within the forum state renders that defendant amenable to suit in any lawsuit brought against it in the forum state, or specifically, in cases in which the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum.

*Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996) (internal citation omitted).  Here, Plaintiffs only allege the existence of specific personal jurisdiction.  (Doc. 15, 6.)

### a.    Specific Personal Jurisdiction

In analyzing specific personal jurisdiction in a diversity case such as this, courts examine the law of the forum state, subject to constitutional due-process requirements, to determine whether personal jurisdiction exists.  *Air Prods. & Controls*, 503 F.3d at 550; *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000).  A two-step

process applies here: (1) the court must determine whether Ohio's law-arm statute authorizes jurisdiction; and (2) the court must determine whether that authorization comports with constitutional due process. *Air Prods. & Controls*, 503 F.3d at 550; *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 361 (6th Cir. 2008). Because "the Ohio Supreme Court has ruled that the Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause," *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000), both steps must be analyzed, *Goldstein v. Christiansen*, 638 N.E.2d 541, 543, 545 n.1 (Ohio 1994).

### i.      Ohio's Long-Arm Statute

Ohio precedent controls the interpretation of Ohio's long-arm statute, *Hildebrand v. Steck Mfg. Co., Inc.*, 279 F.3d 1351, 1354 (6th Cir. 2002), which states in relevant part as follows:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting any business in this state;
>
> (2) Contracting to supply services or goods in this state;
>
> (3) Causing tortious injury by an act or omission in this state;
>
> (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

O.R.C. § 2307.382(A).  Plaintiffs argue that any of the above subsections of § 2307.381(A) establish personal specific jurisdiction over Mr. Keaffaber.  (Doc. 15, 4.)

Mr. Keaffaber presents no arguments relating to Ohio's long-arm statute.  (*See* Docs.

25 & 49.)  The Court only considers the first subsection of Ohio's long-arm statute because it agrees that Mr. Keaffaber was transacting business in Ohio.

"The term 'transact' as utilized in the phrase 'transacting any business' encompasses 'to carry on business' and 'to have dealings,' and is broader than the word 'contract.'"  *Goldstein v. Christiansen*, 638 N.E.2d 541, 544 (Ohio 1994) (internal quotations omitted) (quoting *Ky. Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 559 N.E.2d 477, 480 (Ohio 1990)).  Mr. Keaffaber was an employee of an Ohio corporation for over five years (Doc. 25-1 ¶ 5), he had an employment contract with that Ohio corporation (Doc. 25-1 ¶ 12), he was physically present in Ohio for work regularly (Doc. 25-1 ¶¶ 19–28), and he frequently communicated electronically with persons in Ohio for business purposes (Doc. 50, 52, 53–55).  While an out-of-state employee working for an Ohio corporation does not alone constitute "transacting any business," "such a status is at least a step in that direction."  *The Rightthing, LLC v. Brown*, No. 3:09 CV 135, 2009 WL 249694, at *3 (N.D. Ohio Feb. 2, 2009).  Another step is Mr. Keaffaber's regular telephone and email communications with Contech and other Contech employees in Ohio.  *See, e.g.*, *Rexam Healthcare Packaging, Inc. v. Osiris Med., Inc.*, No. 3:09 CV 1584, 2010 WL 819063, at *2 (N.D. Ohio Mar. 9, 2010).  Mr. Keaffaber's regular physical presence in Ohio is also a strong factor in favor of a finding of personal jurisdiction.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) ("[T]erritorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there . . . .").  The length of the employment relationship between Mr. Keaffaber and Contech is a factor here as well.  *See, e.g.*, *Tharo Sys., Inc. v. Cab Produkttechnik GMBH & Co. KG*, 196 F. App'x 366,

369 (6th Cir. 2006) (noting the length of the business relationship as a factor going towards "transacting any business" in Ohio).  Because a preponderance of the evidence shows that Mr. Keaffaber was "transacting any business" in Ohio, Ohio's long-arm statute authorizes jurisdiction over him.

### ii.    Due Process

Because Ohio's long-arm statute is not coterminous with the Due Process Clause, this Court cannot exercise personal jurisdiction over Mr. Keaffaber if doing so would violate his constitutional rights to due process.  *See Kauffman Racing Equip., L.L.C. v. Roberts*, 930 N.E.2d 784, 792 (Ohio 2010).  The Sixth Circuit has established a three-part test for determining whether due process is satisfied.  *Air Prods. & Controls*, 503 F.3d at 550.  The Sixth Circuit states as follows:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002) (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).  Each part of this test must be satisfied for a court to find its jurisdiction consistent with due process.  *Id.*

### 1)    Purposeful Availment

The first part of the test asks whether Mr. Keaffaber has purposefully availed himself of the privilege of acting in the forum state or causing a consequence in the forum state.  *Mohasco*, 401 F.2d at 381.  Purposeful availment is the "constitutional

touchstone" of personal jurisdiction. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282

F.3d 883, 889 (6th Cir. 2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,

474 (1985)). Purposeful availment is satisfied when, "the defendant's contacts with the

forum state proximately result from actions by the defendant *himself* that create a

substantial connection with the forum State, and when the defendant's conduct and

connection with the forum are such that he should reasonably anticipate being haled

into court there." *Bridgeport Music, Inc. v. Still N The Water Publishing*, 327 F.3d 472,

478 (6th Cir. 2003) (internal quotations omitted) (quoting *CompuServe, Inc. v.

Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996)). "The emphasis in the purposeful

availment inquiry is whether the defendant has engaged in 'some overt actions

connecting the defendant with the forum state.'" *Id.* (quoting *Dean v. Motel 6 Operating

L.P.*, 134 F.3d 1269, 1274 (6th Cir. 1998).

The Sixth Circuit has found that "the Ohio 'transacting any business' standard is

coextensive with the purposeful availment prong of constitutional analysis." *Burnshire

Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 432 (6th Cir. 2006).

Accordingly, there is no need to do a separate purposeful-availment analysis here.

Because the Court has already found that Mr. Keaffaber was "transacting any business"

in Ohio, this necessarily means that the purposeful-availment prong of the due-process

analysis is satisfied as well. *See id.* Nonetheless, the Court reviews its reasoning.

Although a contract alone will not confer personal jurisdiction over a foreign

defendant, courts must look to "prior negotiations and contemplated future

consequences, along with the terms of the contract and the parties' actual course of

dealing" to determine whether a contract can establish that a defendant purposefully

established minimum contacts within the forum state.  *Burger King*, 471 U.S. at 478.

Thus, not only did Mr. Keaffaber and Contech enter into a contract—the Agreement—

(Doc. 25-1 ¶ 12) the "actual course of dealing" show that this contract lasted for well

over five years (Doc. 25-1 ¶ 5).  Mr. Keaffaber purposefully availed himself of Ohio's

laws, in part, by doing business with a corporation that he knew was headquartered in

Ohio.  Likewise, the Agreement had an Ohio choice-of-law provision (Doc. 1-1, 4; Doc.

1-2, 4), which is a significant factor in determining purposeful availment.  *Burger King*,

471 U.S. at 481–82 (finding that although a choice-of-law provision in a contract is not

dispositive, it is a factor in considering whether a defendant has purposefully invoked

the benefits and protections of a state's law.)  Although the Agreement was a boilerplate

contract and there were no prior negotiations between the parties, (Doc. 25-1 ¶ 14) Mr.

Keaffaber signed it nonetheless and necessarily must have considered that it could be

enforced against him.  Thus, the choice-of-law provision appears as a deliberate

affiliation with Ohio on Mr. Keaffaber's part that should have made him reasonably

foresee the possibility of litigation in Ohio.  *Burger King*, 471 U.S. at 482.  Additionally,

Mr. Keaffaber traveled to Ohio regularly for business.  (Doc. 25-1 ¶¶ 19–28.)  And at

least some of these visits were purely voluntary.  (*See, e.g.*, Doc. 50, 23.)  Thus, his

visits there were more than fortuitous happenstance or random occurrences.  *See*

*Burger King*, 471 U.S. at 480.  Mr. Keaffaber also appears to have purposefully availed

himself of Ohio's laws by corresponding with the Ohio Department of Transportation on

Sanders' behalf on at least one occasion.  (Doc. 25-1 ¶ 49.)

Mr. Keaffaber's contacts with Ohio resulted from his own overt actions that

created a substantial connection with Ohio, and his conduct and connections with Ohio

were such that he should have reasonably anticipated being haled into court there. *See Bridgeport Music, Inc.*, 327 F.3d at 478. All told, Plaintiffs have shown by a preponderance of the evidence that Mr. Keaffaber purposefully availed himself of acting within Ohio and causing a consequence there. *See Mohasco*, 401 F.2d at 381.

### 2) Arising From

The second prong of the relevant test is that a plaintiff's cause of action must "arise from" the defendant's contacts with the forum State. *Air Prods.,* 503 F.3d at 553. This is a "lenient standard." *Id.* "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996) "This factor does not require that the cause of action formally arise from defendant's contacts with the forum; rather, this criterion requires only that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities." *Bird*, 289 F.3d at 875 (internal quotations omitted) (quoting *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989)). Similarly, when the operative facts "are at least marginally related to the alleged contacts" between the defendant and the forum state, then the "arising from" prong is satisfied. *Id.*

Because one of Plaintiff's claims is for breach of contract against Mr. Keaffaber, (Doc. 1 ¶¶ 92–101) that claim naturally arises from Mr. Keaffaber's activities in Ohio. *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) ("[I]f the cause of action is for breach of that contract, as it is here, then the cause of action naturally arises from the defendant's activities in Ohio."); *see also Wright Int'l Express, Inc. v. Roger Dean Chevrolet, Inc.,*

689 F. Supp 788, 790 (S.D. Ohio 1988) (the arises-from prong is satisfied when the defendant breaches a contact).  Here, nearly all of Plaintiffs' claims flow from Mr. Keaffaber's alleged breach of contract, and although the allegedly unauthorized consulting work occurred outside Ohio, (Doc. 50, 86-87) Contech suffered its alleged injuries within Ohio.  Additionally, Mr. Keaffaber's correspondence with the Ohio Department of Transportation on Sanders' behalf is another basis for Plaintiffs' claims. (Doc. 1 ¶ 40.)  Thus, the operative facts of Plaintiffs' claims are "at least marginally related" to Mr. Keaffaber's contacts with Ohio.  *See Bird*, 289 F.3d at 875.  Accordingly, the second part of the test is satisfied.  Plaintiffs have shown by a preponderance of the evidence that its claims arise from Mr. Keaffaber's contacts with Ohio.

### 3) Reasonableness

The third prong of the relevant test states that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Air Prods.,* 503 F.3d at 554.  Sixth Circuit precedent dictates that when applying this third prong, "where the first two criteria are satisfied, 'only the unusual case will not meet the third criterion.'"  *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624 (6th Cir. 1998) (quoting *Theunissen*, 935 F.2d at 1461)).  "Whether the exercise of jurisdiction over a foreign defendant is reasonable is a function of balancing three factors: the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief."  *City of Monroe Emps. Ret. Sys. v. Bridgestone*, 399 F.3d 651, 666 (6th Cir. 2005) (internal quotations omitted).  Courts must also weigh "the interstate judicial system's interest in obtaining the most efficient resolution of

controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

As to the burden on the defendant, Mr. Keaffaber would not be overly burdened by traveling to this Court. Although Mr. Keaffaber resides in Indiana, (Doc. 25-1 ¶ 9), he regularly traveled to Ohio during his employment with Contech. In fact, the requirement of his presence in this state for purposes of this litigation would likely be less burdensome than the requirements of his employment. As to the second factor, the interests of the forum State, Contech's and Ohio's interests in seeing justice done overrides the inconvenience of having to appear in Ohio. *See Air Prods.*, 503 F.3d at 555. Ohio also has interests related to the alleged breach of the Agreement, which is governed by Ohio law, and which was written to protect an Ohio corporation with its principal place of business in Ohio. As to the interstate judicial system's interest in obtaining the most efficient resolution of this controversy, keeping the case moving forward in this Court rather than starting all over again in an Indiana court seems to be the most efficient use of everyone's time and efforts. Balancing these factors, it is reasonable to exercise jurisdiction over Mr. Keaffaber here. Because the first two prongs of the relevant due-process test have been satisfied, and because there are no serious considerations put forward by Mr. Keaffaber to overcome or contradict that inference, the exercise of personal jurisdiction is reasonable here. *See Air Prods.*, 503 F.3d at 555.

### 2.    Personal Jurisdiction Conclusion

Concluding this analysis of Defendant Keaffaber's motion to dismiss for lack of

personal jurisdiction, the Court finds that Plaintiffs have carried their burden of proving personal jurisdiction by a preponderance of the evidence. *See Serras*, 875 F.2d at 1214. Mr. Keaffaber is subject to Ohio's long-arm statute under the "transacting any business" clause. *See* O.R.C. § 2307.382(A)(1). And the constitutional requirements of due process have been satisfied by showing that Mr. Keaffaber has purposefully availed himself of acting in Ohio, Plaintiffs' claims arise from Mr. Keaffaber's contacts with Ohio, and Mr. Keaffaber's acts have a substantial enough connection with Ohio to make the exercise of jurisdiction here reasonable. *See Mohasco*, 401 F.2d at 381. Thus, Defendant Keaffaber's motion to dismiss based on the lack of personal jurisdiction is DENIED.

## C.     Venue

Defendant Keaffaber also argues that venue in this Court is improper, and in the alternative, that this matter should be transferred the United States District Court for the Southern District of Indiana. (Doc. 11-1, 5–6.) The Court considers each of these issues.

### 1.     Improper Venue

Once a defendant contends that the current venue is improper, plaintiffs bear the burden of establishing that the current venue is the proper forum for each claim asserted in the complaint. *Centerville ALF, Inc., v. Balanced Care Corp.,* 197 F. Supp. 2d 1039, 1046 (S.D. Ohio 2002) (citing *Astor Holdings, Inc. v. Roski*, No. 01 CIV.1905(GEL), 2002 WL 72936, at *8 (S.D.N.Y. Jan. 17, 2002)). Plaintiffs allege that venue is proper under 28 U.S.C. § 1391(a)(2). (Doc. 1 ¶ 65; Doc. 15, 12.) Section 1391(a)(2) provides that venue is proper in "a judicial district in which a substantial part

of the events or omissions giving rise to the claim occurred."  28 U.S.C.  § 1391(a)(2).

When interpreting § 1391(a)(2), the focus is on the word "substantial."  *See First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998).  As the commentary following the 1990 revisions to § 1391(a)(2) states: "The fact that substantial activities took place in district B does not disqualify district A as proper venue as long as 'substantial' activities took place in A, too.  Indeed, district A should not be disqualified even if it is shown that the activities in district B were more substantial, or even the most substantial."  *Id.* (quoting David D. Siegel, Commentary on the 1988 and 1990 Revisions of Section 1391, Subdivision (a), Clause 2, 28 U.S.C. § 1391 (1993)).

Defendant Keaffaber contends that a substantial part of the events did not occur in this District for several reasons.  First, Mr. Keaffaber contends that he "was not regularly present in Ohio."  (Doc. 25, 7.)  The Court has already determined that this is incorrect based on the evidence in record.  Mr. Keaffaber was regularly present in Ohio.  (Doc. 25-1 ¶¶ 19–28; Doc. 15-1 ¶ 5; Doc. 50, 19.)  Given each particular claim at issue here, (*see* Doc. 1 ¶¶ 66–124) Mr. Keaffaber's presence in Ohio lends to the conclusion that a "substantial part" of the events or omissions giving rise to Plaintiffs' claims occurred in Ohio.

Second, Mr. Keaffaber argues that "[h]e resided in Indiana and solely worked from his home office in Indiana."  (Doc. 25, 7.)  This is irrelevant to a determination of venue.  *Consol. Ins. Co. v. Vanderwoude*, 876 F. Supp. 198, 199–200 (N.D. Ind. 1995) (recognizing that a defendant's residence is irrelevant a determination of venue under § 1391(a)(2)).  The question is not where Mr. Keaffaber resided or worked, the question is where "a substantial part of the events or omissions giving rise to the claim occurred."

28 U.S.C. § 1391(a)(2).  Residing in and working from his home office in Indiana may mean that a substantial part of the events occurred there, but it does not necessarily mean that a substantial part of the relevant events did not also occur in Ohio.  As the Sixth Circuit recognized, "The fact that substantial activities took place in district B does not disqualify district A as proper venue as long as 'substantial' activities took place in A, too." *First of Mich. Corp.*, 141 F.3d at 263.

Third, Mr. Keaffaber argues that the email he sent to the Ohio Department of Transportation on Sanders' behalf was merely "a general inquiry," and that, "Sanders never received approval in Ohio; therefore, Contech has not been damaged by this singular email." (Doc. 25, 7.)  These points are also irrelevant for venue purposes (at least as they are presented).  Ignoring the fact that Defendant Keaffaber has not presented sufficient evidence going to damages, (*see* Docs. 25, 49, & 50) whether or not Plaintiffs have been damaged does not decide the issue of venue.  Neither is it relevant that that Mr. Keaffaber's email was only a general inquiry.  If Contech was damaged, and if said email was a cause of any damages—issues on which discovery has not yet been completed and on which Defendant Keaffaber has not presented any evidence—any resulting damage occurred to Contech at its headquarters in Ohio.

For breach-of-contract claims, factors such as where the contract was negotiated, where it was performed, and where any alleged breach occurred are relevant to determining where a "substantial part of the events or omissions" occurred for venue purposes.  *Russian Collections, Ltd. v. Melamid*, No. 2:09-cv-300, 2009 WL 4016493, at *5 (S.D. Ohio Nov. 18, 2009).  Furthermore, "[w]here contract negotiations occurred in a particular state, and where the effects of the alleged breach were felt in

that state, the 'substantial part' requirement of 28 U.S.C. § 1391(a) is satisfied." *Id.* Here, although there were no prior negotiations between the parties (Doc. 25-1 ¶ 14) (Mr. Keaffaber testified that the Agreement was a non-negotiable contract (Doc. 50, 94)), Contech has nonetheless felt the results of the purported breach in the Southern District of Ohio, where its principle place of business is located. This is true for all Plaintiffs' claims. Furthermore, "[p]arties who agree to a forum selection clause agree to submit themselves to the jurisdiction of the forum selected in the clause." *James N. Gray Co. v. Airtek Sys., Inc.*, No. Civ.A. 05-399-JBC, 2006 WL 1986968, at *2 (E.D. Ky. Jan. 24, 2006) (citing *Angstrom Tech. Inc. v. Wray*, 382 F. Supp. 2d 895, 897 (E.D. Ky. 2005)). Although Mr. Keaffaber felt that he "had no choice" but to sign the Agreement, he nonetheless signed it willingly with the awareness that Ohio law would apply to the Agreement. (Doc. 50, 94–95.) Moreover, a review of the Complaint indicates that a substantial part of the events or omissions at issue here occurred in Ohio. For example, Plaintiffs alleged the following: (1) Mr. Keaffaber breached the Agreement on several occasions (Doc. 1 ¶¶ 29–34); (2) he contacted the Ohio Department of Transportation on Sanders' behalf (Doc. 1 ¶ 41); (3) he used Contech property and confidential information on Sanders' behalf (Doc. 1 ¶ 44); and (4) he shared Contech property and confidential information with former Contech employees who were competing with Contech in Ohio (Doc. 1 ¶¶ 52, 56–58; Doc. 50, 30). For each of the foregoing reasons, the Court finds that a substantial part of the events or omissions giving rise to all Plaintiffs' claims occurred in this judicial district. Accordingly, venue in this district is proper, *see* 28 U.S.C. § 1391(a)(2), and Defendant Keaffaber's motion to dismiss based on improper venue is DENIED.

## 2. Transfer of Venue

Defendant Keaffaber also argues in the alternative that the Court should transfer this matter to the United States District Court for the Southern District of Indiana. (Doc. 11-1, 5–6.) He bases this request on 28 U.S.C. §§ 1406 and 1404. (Doc. 11-1, 7; Doc. 49, 3.) The Court considers each separately.

### a. Transfer Under § 1406

Section 1406 provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Accordingly, "section 1406 applies to actions that are brought in an impermissible forum." *Jackson v. L&F Martin Landscape*, 421 F. App'x 482, 483 (6th Cir. 2009) (citing *Martin v. Stokes*, 623 F.2d 469, 471 (6th Cir. 1980)). Under § 1406(a), "[r]ather than dismiss the action when the issue is raised, a district court may, in its discretion transfer the action to a permissible forum." *Martin*, 623 F.2d at 471. The reverse of this means that if venue is proper, then transfer under § 1406(a) is not warranted. *See Kerobo v. Sw. Clean Fuels, Corp.,* 285 F.3d 531 (6th Cir. 2002) (upholding denial of §1406(a) motion to transfer venue because venue was proper under §1391). Here, given the above conclusion that the Southern District of Ohio is a permissible venue for this case, Defendant Keaffaber's motion to transfer venue pursuant to §1406(a) must be DENIED.

### b. Transfer under § 1404

Although he does not raise it in his motion to dismiss or in his reply in support (*see* Docs. 11 & 25), Defendant Keaffaber argues in his supplemental post-hearing brief

for transfer under § 1404 (Doc. 49, 3).  In general, arguments raised only in reply briefs

need not be considered, in part because there is no opportunity to respond.  *See, e.g.*,

*Freeman v. Bd. of Trs. of Teamsters Joint Council No. 41 Severance Plan*, No.

1:04cv2503, 2006 WL 2460863, at *3 n.2 (N.D. Ohio Aug. 23, 2006); *Sims v. Piper*, No.

07-14380, 2008 WL 3318746, at *4–5 (E.D. Mich. Aug. 8, 2008) (collecting cases).  "[I]t

is well-settled that a party may not raise new issues for the first time in a reply brief."

*Resolution Trust Corp. v. Townsend Assocs. Ltd. P'ship*, 840 F. Supp. 1127, 1142 n.15

(E.D. Mich. 1993) (citing *United States v. Jerkins*, 871 F.2d 598, 602 n.3 (6th Cir.

1989)).  However, because Plaintiffs do address the application of § 1404, (Doc. 15,

18–20) the Court deems it proper to consider the issue.

Section 1404 states that "[f]or the convenience of parties and witnesses, in the

interest of justice, a district court may transfer any civil action to any other district or

division where it might have been brought."  28 U.S.C. § 1404(a).  In general, § 1404(a)

applies to those actions "brought in a permissible yet inconvenient forum."  *Martin v.

Stokes*, 623 F.2d 469, 471 (6th Cir. 1980).  District courts have discretion to adjudicate

motions for transfer under § 1404(a) "according to an 'individualized, case-by-case

consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S.

22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  "The burden

of proof is on the moving party to demonstrate why a change of venue should be

granted."  *Hanning v. New England Mut. Life Ins. Co.*, 710 F. Supp. 213, 215 (S.D. Ohio

1989).  Additionally, "'unless the balance is strongly in favor of the defendant, the

plaintiff's choice of forum should rarely be disturbed.'"  *Reese v. CNH Am. LLC*, 574

F.3d 315, 320 (6th Cir. 2009) (quoting *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608

612 (6th Cir. 1984)).

###    c.    The Southern District of Indiana

Following 28 U.S.C. § 1404(a), the Court must first must determine if this matter could have been brought in the Southern District of Indiana.  In reviewing Plaintiffs' Complaint, the Court determines that just as jurisdiction and venue are established in the Southern District of Ohio, so too could they be established in the Southern District of Indiana.  *See* 28 U.S.C. §§ 1332(a), 1391(a).  The parties do not dispute this conclusion.  (*See* Doc. 15, 18–20; Doc. 49, 3–6.)

###    d.    Public and Private Factors

Next, "in ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other-public interest concerns, such as systematic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)).  Private factors include "the 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947).  Public factors include "court congestion; the 'local interest in having localized controversies decided at home;' the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance

27

of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Id.* (quoting *Gulf Oil*, 330 U.S. at 509). Other factors in determining whether a change of venue is warranted are, (1) the nature of the suit; (2) the place of the events involved; (3) the relative ease of access to sources of proof; (4) the nature and materiality of testimony to be elicited from witnesses who must be transported; (5) the respective courts' familiarity with the applicable law and the conditions of their dockets; and (6) the residences of the parties. *Centerville ALF, Inc v. Balanced Care Corp.,* 197 F. Supp. 2d 1039, 1049 (S.D. Ohio 2002) (citing *Midwest Motor Supply Co., Inc. v. Kimball*, 761 F. Supp. 1316, 1318 (S.D. Ohio 1991)).

Defendant Keaffaber raises the following points here: (1) the majority of the alleged acts occurred in Indiana; (2) Mr. Keaffaber and Sanders are both based in Indiana and work there; (3) Mr. Keaffaber is a long-time resident of Indiana; (4) Mr. Keaffaber was based in Indiana during his entire employment with Contech; (5) Mr. Keaffaber only had a limited work role in Ohio; (6) both Defendants have counsel in Indiana; (7) Contech is an international company with a presence in all fifty states; (8) Contech's counsel is also admitted in the Southern District of Indiana; (9) many witnesses are located in Indiana; (10) the burden of transfer on Contech is low as compared to Mr. Keaffaber; and (11) the Agreement was negotiated and executed in Indiana. (Doc. 49, 4–6.) Plaintiffs counter with the following points of their own: (1) the Southern District of Ohio is not an inconvenient forum; (2) Contech is located in the Southern District of Ohio; (3) there is a local interest in hearing the case in Ohio; (4) the Agreement contains an Ohio choice-of-law provision so there is an interest in having a

28

court in Ohio apply Ohio law; (6) many witnesses are based out of Contech's headquarters in this District; (7) it would not be burdensome for Mr. Keaffaber to travel to Ohio because he regularly traveled to Ohio for work.  (Doc. 15, 19–20.)

Considering each of these points, balancing the above factors, and especially considering that a plaintiff's choice of forum should rarely be disturbed, *Reese,* 574 F.3d at 320, the Court holds that transfer is inappropriate here.  To begin, the convenience of the parties does not weigh in one direction or the other.  Both parties would find it more convenient to be in their "home" district, but as other courts have held, "[a] transfer is not appropriate if the result is simply to shift the inconvenience from one party to another."  *Wayne County Emps. Ret. Sys. v. MGIC Inv. Corp.*, 604 F. Supp. 2d 969, 975 (E.D. Mich. 2009) (citing *Evans Tempcon, Inc. v. Index Indus., Inc.*, 778 F. Supp. 371, 377 (W.D. Mich. 1990)).  The convenience of potential witnesses is neutral as well.  Neither party's witness lists are so lopsided as to overcome the mandate that a plaintiff's choice of forum should rarely be disturbed.  The same is true for the residences of the parties.  Because Defendants are in Indiana, and Plaintiffs are in Ohio, this factor is neutral.  Weighing against transfer, although only slightly, is "the local interest in having localized controversies decided at home," *Piper Aircraft*, 454 U.S. at 241 n.6, and this Court's familiarity with Ohio law.  Regarding Defendant Keaffaber's specific points, the relevant points he raises are not so strong as to overturn Plaintiffs' choice of venue; in fact, most of them are irrelevant to the issue.  The approximately 110 miles separating the federal courthouses in Cincinnati, Ohio, and Indianapolis, Indiana, is not such a great distance as to convince this Court that transfer is warranted here.  Defendant Keaffaber's motion to transfer venue pursuant to §1404(a) is DENIED.

Accordingly, because neither §§ 1406 nor 1404(a) warrant transfer, Defendant Keaffaber's motion in the alternative to transfer this matter to the United States District Court for the Southern District of Indiana is DENIED.

## IV.    Defendant Sanders' Motion to Transfer Venue

Defendant Sanders originally sought dismissal based on lack of personal jurisdiction, and alternatively, it requested transfer to the Southern District of Indiana. (Doc. 27, 1.)  However, Sanders has since withdrawn its motion to dismiss for lack of jurisdiction.  It only proceeds on its motion to transfer venue.  (Doc. 40.)  Sanders seeks transfer based on 28 U.S.C. § 1404(a).  (Doc. 27, 11.)

Referring to the above rules and factors relating to transfer of venue under § 1404(a), the Court first holds, as it did above, that this case could have been brought in the Southern District of Indiana.  *See* 28 U.S.C. §§ 1332(a), 1391(a), 1404(a).  Plaintiffs do not dispute this conclusion.  (*See* Docs. 29 & 47.)

Arguing in favor of transfer, Defendant Sanders first contends that none of the above-cited public factors applies to this case.  (Doc. 48, 2.)  Recall that the public factors include, "court congestion; the 'local interest in having localized controversies decided at home;' the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty."  *Piper Aircraft*, 454 U.S. at 241 n.6 (quoting *Gulf Oil*, 330 U.S. at 509).  Given that Contech's headquarters are in this District and that Ohio law will apply to most claims, there is a local interest in having this controversy decided in Plaintiff's "home district" by an Ohio court applying Ohio law.

This factor only weighs weakly against transfer, but it is not neutral as Sanders suggests.

Sanders next argues that the private factors weigh in favor of transfer. (Doc. 48, 2–4.) The Court disagrees here as well. The relevant private factors include, "the 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Piper Aircraft*, 454 U.S. at 241 n.6 (quoting *Gulf Oil*, 330 U.S. at 509). Sanders first maintains that it would be more equitable for this litigation to proceed in Indianapolis because it is "a smaller company of thirty-five employees," which is considerably smaller as compared to Contech. (Doc. 48, 3.) Additionally, proceeding in Indiana would be "much more convenient for Sanders," and, "it would be much cheaper for Sanders." (Doc. 48, 3.) While it is undoubtedly true that litigating this matter in Indiana would be more convenient for Sanders, "[a] transfer is not appropriate if the result is simply to shift the inconvenience from one party to another." *Wayne County Emps. Ret. Sys.*, 604 F. Supp. at 975. Sanders also argues that "[f]rom a cost and convenience standpoint, it really makes no difference to Contech whether its attorney has to fly to Indianapolis or Cincinnati," and, "Contech suffers no true prejudice by having this matter transferred to the Southern District Court of Indiana." (Doc. 48, 4.) Considering Contech's vehement opposition to Sanders' motion to transfer, this assessment is incorrect. (*See* Doc. 29, 12–15.) Regardless, the issue of convenience here is neutral; it does not weigh for or against transfer because simply shifting the inconvenience from

one party to the other is inappropriate. *Wayne County Emps. Ret. Sys.*, 604 F. Supp. at 975.

Sanders next points out that many potential witnesses reside in the Indianapolis area and many of the events at issue in this matter took place in Indiana. (Doc. 48, 3.) But just as the Court held above, the location of potential witnesses is neutral here. Both parties have witnesses in both states. The same is true for the parties' residences. This factor is neutral as well, as described above. After considering the issues of convenience, the interests of justice, and all other relevant factors, *see* 28 U.S.C. § 1404(a); *Piper Aircraft*, 454 U.S. at 241 n.6, and especially considering the Sixth Circuit's guidance that "the plaintiff's choice of forum should rarely be disturbed," *Reese*, 574 F.3d at 320, the Court finds that Defendant Sanders has not upheld its burden of demonstrating why a change of venue should be granted, *see Hanning*, 710 F. Supp. at 215. Accordingly, Defendant Sanders' motion to transfer venue is DENIED.

## V. Conclusion

Based on the foregoing, Defendant David E. Keaffaber's Motion to Dismiss for Lack of Subject Matter Jurisdiction, Lack of Personal Jurisdiction and Improper Venue, or in the Alternative, Motion to Transfer (Doc. 11) is **DENIED**; and the Motion to Dismiss of Defendant, Sanders Pre-Cast Concrete Systems, Inc., or in the Alternative, to Transfer Venue (Doc. 27) is **DENIED**. More specifically, the Court holds as follows:

- Defendant Keaffaber's motion to dismiss for lack of subject-matter jurisdiction is **DENIED**.

- Defendant Keaffaber's motion to dismiss based on the lack of personal jurisdiction is **DENIED**.

- Defendant Keaffaber's motion to dismiss based on improper venue is **DENIED**.

- Defendant Keaffaber's alternative motion to transfer venue is **DENIED**.

- Defendant Sanders' motion to transfer venue is **DENIED**.

    **IT IS SO ORDERED**.

                                        *s/Michael R. Barrett*
                                        United States District Judge